# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRACY MCNEIL,<br><br>    *Plaintiff,*<br><br>    v.<br><br>SOCIAL SECURITY ADMINISTRATION;<br><br>ANDREW SAUL (Commissioner of Social Security Administration);<br><br>JOHN MORENZ (Associate Commissioner of Social Security Administration's Office of Data Exchange, Policy Publications, and International Negotiations);<br><br>U.S. DEPARTMENT OF TREASURY;<br><br>JANET YELLEN (Secretary of the U.S. Department of Treasury);<br><br>STEVE MNUCHIN (Former Secretary of the U.S. Department of Treasury),<br><br>NORTHROP GRUMMAN CORP;<br><br>CGI FEDERAL; INC.;<br><br>LEIDOS HOLDINGS, INC.;<br><br>and IDENTITY THEFT GUARD SOLUTIONS, INC. f/k/a "ID EXPERTS ;<br><br>    *Defendants..* | **Case No.**<br><br>**Complaint**<br><br>**Jury Trial Demand** |

1

## COMPLAINT

AND NOW, Plaintiff, Tracy McNeil, by and through her undersigned counsel hereby files this Complaint initiating a civil action against Defendants Social Security Administration, Andrew Saul (Commissioner of Social Security Administration), John Morenz (Associate Commissioner of Social Security Administration), U.S. Department of Treasury and Janet Yellen (Secretary of the U.S. Department of Treasury), Steve Mnuchin (Former Secretary of the U.S. Department of Treasury), Northrop Grumman Corporation, CGI Federal Inc. and Leidos Holdings, Inc. and Identity Theft Guard Solutions, Inc. f/k/a "ID Experts".  In connection therewith, Plaintiff avers as follows:

## PARTIES

1.      Plaintiff, Tracy McNeil ("Plaintiff" or "Ms. McNeil") is an adult individual citizen and resident of the Commonwealth of Pennsylvania, who at all times relevant hereto resided at 5310 Germantown Ave., Philadelphia, PA 19144.

2.      Defendant Social Security Administration ("SSA") is a federal agency that administers Social Security benefits, including disability, retirement and survivorship.  SSA issues American citizens a Social Security Number in connection with said benefits, and many of the benefits associated with American citizenship.

3.      SSA maintains national death records in its "Death Master File". SSA sells, exchanges and disseminates that vital information to other Federal agencies, to state agencies and to private businesses and organizations.

4.      SSA operates from national headquarters of 1100 West High Rise 6401 Security Blvd., Baltimore, MD 21235.  SSA has regional office located at 2 Penn Center, Suite 2000A, 1500 JFK Blvd. 20th Floor, Philadelphia, PA 19102.

5. Defendant, Andrew Saul is an adult individual and at all times relevant hereto, served as Commissioner of SSA. As Commissioner, Saul is and was responsible for assuring accuracy as it relates to US citizens' Social Security Numbers, maintaining the Death Master File and assuring the US maintains accurate vital records for US citizens.

6. Upon information and belief, Commissioner Saul maintains an office at 1100 West High Rise 6401 Security Blvd., Baltimore, MD 21235.

7. Defendant John Morenz is an adult individual who serves as Associate Commissioner of SSA's Office of Data Exchange, Policy Publications, and International Negotiations

8. Upon information and belief, Associate Commissioner Morenz maintains an office at 6401 Security Boulevard G-401 WHR, Baltimore, Maryland, 21235, United States

9. Defendant U.S. Treasury is the Federal agency responsible for *inter alia* printing currency, implementing monetary policy, collecting taxes and issuing refund and monitoring employment and economic health in the US. The US Treasury also issues certain stimulus and relief checks to US citizens.

10. The U.S. Treasury maintains its headquarters at Treasury Building 1500 Pennsylvania Avenue, NW Washington, D.C. 20220. The U.S. Treasury maintains a regional office of 13000 Townsend Rd, Philadelphia, PA 19154.

11. Defendant Janet Yellen is an adult individual who currently serves as the Secretary of the U.S. Department of Treasury. As Secretary, she is responsible for record keeping, investigative and quality control procedures for all Agencies within the U.S. Department of Treasury, including the Internal Revenue Service.

12.     Upon information and belief, Secretary Yellen maintains an address of Treasury Building 1500 Pennsylvania Avenue, NW Washington, D.C. 20220.

13.     Defendant Steve Mnuchin is an adult individual and is the Former Secretary of the U.S. Department of Treasury.  Secretary Mnuchin is sued for acts and omissions which occurred during his tenure as Secretary of the Treasury. As Secretary, Mr. Mnnuchin was responsible for record keeping, investigative and quality control procedures for all Agencies within the U.S. Department of Treasury, including the Internal Revenue Service.

14.     Upon information and belief, Secretary Mnuchin maintained an address of Treasury Building 1500 Pennsylvania Avenue, NW Washington, D.C. 20220 and can be served at that address.

15.     Defendant Northrop Grumman Corporation ("Northrop") is a private corporation which serves as a federal government contractor providing various services including information technology and data management.

16.     At all times relevant hereto, Northrop provided IT and data management services for SSA.

17.     Northrop maintains its headquarters at 2980 Fairview Park Drive Falls Church, VA 22042

18.      Defendant CGI Federal Inc. ("CGI") is a private corporation which serves as a federal government contractor providing various services including information technology and data management.

19.     At all times relevant hereto, CGI provided IT and data management services for SSA.

20.     CGI maintains its headquarters at 12601 Fair Lakes Cir Fairfax, VA 22033

21.     Defendant Leidos Holdings, Inc. ("Leidos") is a private corporation which serves as a federal government contractor providing various services including information technology and data management.

22.     At all times relevant hereto, Leidos provided IT and data management services for SSA.

23.     Leidos maintains its headquarters at 1750 Presidents St., Reston, VA 20190.

24.     Defendant Identity Theft Guard Solutions, Inc. f/k/a "ID Experts" (hereinafter referred to as "ID Experts") is a private corporation which contracts *inter alia* with federal agencies in connection with the purported protection of persons' identifying information.

25.     ID Experts maintains an office at Lincoln Center One, 10300 SW Greenburg Road, Suite 570, Portland, OR 97223.

26.     At all times relevant hereto, Defendants acted through their employees, agents, contractors, vendors, and subrogees.

## VENUE AND JURISDICTION

27.     This Court has original jurisdiction over Plaintiff's constitutional claims and Federal law claims under 28 U.S.C. §1331 and 28 U.S.C. §1343(a) and over state law related claims herein pursuant to its supplemental jurisdiction under 28 U.S.C. §1367.

28.     Plaintiff is a Philadelphia resident and a substantial portion of the events and occurrences described herein occurred in Philadelphia, which is within the Eastern District of Pennsylvania.

29.     Accordingly, subject matter jurisdiction exists, personal jurisdiction exists and this venue is the proper forum to adjudicate this lawsuit.

## FACTUAL BACKGROUND

### Social Security Administration's Role in Maintaining US Citizens' Social Security Numbers, Vital Records and the "Death Master File"

30.     A primary function of the Social Security Administration is the keeping and exchanging of US Citizens personal identifiable information.  That includes the issuance of Social Security Numbers to US citizens.

31.     Specifically, pursuant to 42 U.S.C. § 405(c)(2) of the Social Security Act of 1936, the SSA issues to US citizens at birth or naturalization, a Social Security Number.

32.     The Social Security Number has become a *de facto* national identification number for taxation, the collection of government benefits, banking, commerce, travel, the issuance of credit, etc.

33.     Defendant Andrew Saul has served as Commissioner of SSA since June of 2017.

34.     SSA has a sub-agency known as the Office of Data Exchange, Policy Publications and International Negotiations which governs the keeping and exchange of personal identifiable information, including persons' Social Security Number and vital status.

35.     Upon information and belief, Defendant John Morenz served as SSA's Chief Technology Officer from 1998 through 2020 and has served Associate Commissioner in charge of the Office of Data Exchange, Policy Publications since August 2020.

36.     In connection with the agency's role in maintaining and disseminating "death information" and its keeping of the "Death Master File' generally, SSA's website provides as follows:

> We compile files of death information from our Master Files of Social Security Number (SSN) Holders and SSN Applications (Enumeration System) system of records, which contains our records of SSNs assigned to individuals since 1936.  These files of death information include, if available, the deceased

individual's SSN, first name, middle name, surname, date of birth, and date of death.

The **full file of death information** *includes* state death records.  Pursuant to section 205(r) of the Social Security Act, we only share the full file with certain Federal and State agencies.  If you are a representative of a Federal or State agency, please see the information below to learn how to submit a request for the full file of death information.

We provide the Department of Commerce's National Technical Information Service (NTIS) a **public file of death information**, which *excludes* state death records.  NTIS sells the public file of death information, also known as the public Death Master File (DMF) or Limited Access DMF, to other agencies and private organizations such as banks and credit companies in accordance with the requirements of section 203 of the Bipartisan Budget Act of 2013.

(See Ex. A. April 10, 2021 SSA Website Printout: About Data Exchange: SSA's Death Information, available at  https://www.ssa.gov/dataexchange/request_dmf.html) (emphasis in original).

### Even After Spending Billions of Dollars on IT Contractors to Improve Data Maintenance, Dissemination and Accuracy, SSA Has Continued to Regularly Misclassify US Citizens' Vital Status

37.     For years, instances of US citizens being mistakenly classified as "deceased" by the Federal government through the SSA's Death Master File has occurred with a disturbing frequency.[1]

38.     As a result of this troubling pattern, in March of 2016, the SSA's Inspector General conducted a study and authored a report on "Mistaken Death Reports" by the agency.  (*See* Exhibit B, Social Security Administration Office of the Inspector General, Cases of Mistaken Death Reports    Low    But    Costly    (March    24,    2016)    *available    at*: https://oig.ssa.gov/newsroom/blog/march24-death-reports.)

---

[1] Plaintiff and her undersigned counsel acknowledge this occurs only to a small percentage of US citizens.

39.     According to the SSA's 2016 IG Report, approximately 12,000 people were wrongfully classified as deceased annually by SSA.  (Id.)

40.     SSA's IG noted that being mistakenly classified as deceased by SSA can have catastrophic effects on a person, potentially leaving an afflicted person unable to collect Medicare or Medicaid or SSI benefits, and often unable to open a bank account, obtain a passport, borrow a loan or file income taxes.[2]

41.     In or order to improve the agency's technological capabilities and for purposes of *inter alia*, better disseminating accurate data, in or around, the summer of 2017, SSA awarded the following contracts to IT vendors:

- Up to $2.4 billion to Defendant CGI Federal;

- Up to $2.3 billion to Defendant Leidos; and

- In excess of $3 billion to Defendant Northrump Grumman.

(*See* Ex. C, Jane Edwards *CGI, Leidos, Northrop Land Spots on SSA IT Services Contract*, GovCon Wire (August 23, 2017) , available at https://www.govconwire.com/2017/08/lockheed-northrop-cgi-land-spots-on-social-security-administration-it-services-idiq/.)

42.     Despite the Inspector General's 2016 Report, and the retention of high-priced IT vendors to improve SSA's data management, the problem of living citizens being misclassified as "deceased" by SSA did not subside.

43.     Accordingly, in June of 2019, the bipartisan SSA Advisory Board concluded the Death Master File should no longer be operated by SSA but should instead be operated by the Treasury:

> The Death Master File (DMF), a file extracted from the Social Security Administration's (SSA) database of Social Security number holders, contains the death reports that SSA collects to administer its programs; the DMF has been a lightning rod for

---

[2] *See* Exhibit C.

criticism for nearly a decade. SSA uses the death data it receives to determine eligibility for and termination of benefit payments .However, errors in the death-reporting process cause severe disruptions to the financial lives of those who are mistakenly reported as dead.

****

By spending significant amounts of its limited administrative budget to make its data collection more efficient and accurate, SSA has sought to protect the public from the adverse outcomes of reporting errors .Unfortunately it has been unable to guarantee accuracy in the deaths that it records, in part because of limitations on activities outside its mission of payment of benefits

****

Given the significant demands placed on SSA to administer its programs and the agency's limited resources, as well as the limitations on its ability to share death data more broadly, SSA should not be responsible for collecting and disseminating death data to the entire federal government when there is another, better option.

*****

The U.S. Department of the Treasury (Treasury) operates an online portal dedicated to preventing and detecting improper federal payments and is designed to provide such data—in real time—across the federal government…. Congress should shift responsibility for collection and dissemination of death data from SSA to Treasury's DNP portal

(*See* Ex. D, Social Security Advisory Board: *Executive Summary: Social Security and the Death Master File* (June 17, 2019) available at ttps://www.ssab.gov/research/social-security-and-the-death-master-file/.)

44.    The SSA Advisory Board's recommendation was not followed.

45.    Despite the agency repeatedly acknowledging the devastating impact of erroneously classifying a person as deceased, Plaintiff Tracy McNeil has learned firsthand that the agency continues to misclassify the vital status of US citizens.

46.     Perhaps more troublingly, Ms. McNeil has also learned that while SSA sells, exchanges and disseminates death information to other government agencies and private businesses, it lacks procedures or proper protocols in place to remediate the downstream impacts of the agency's misclassifying of a person's vital status.

## The US Treasury and the IRS Individual Master File

47.     Separate and apart from SSA's Death Master File, within the US Treasury, records of *inter alia,* US taxpayers' personal tax information and vital records are independently maintained through the IRS "Individual Master File."

48.     US citizens/taxpayers' vital information is often transmitted from the SSA's Death Master File and separately stored by the Treasury/IRS in the IRS Individual Master File.

49.     In recent years, the lack of oversight within the Treasury/IRS as to taxpayers' vital status has come under the spotlight.

50.     For instance, in June of 2020, the Government Accountability Office authored a report where it noted the IRS sent COVID-relief checks to over 1.1 million deceased individuals totaling at least $1.4 billion from the first COVID relief fund alone.  (*See* Ex. E, Government Accountability Office: "Covid-19: Opportunities to Improve federal Response and Recovery Efforts" (June 25, 2020), *available at* https://www.gao.gov/products/gao-20-625.)

51.     As a result of the same problem (lack of oversight and inaccurate keeping of vital records by the Treasury/IRS), Tracy McNeil experienced the inverse of the above-error.  As set forth below in greater length, as a living US citizen and taxpayer, she did not receive COVID-relief checks to which she was entitled, because she was incorrectly classified as deceased by the Treasury and IRS.

**Spring of 2020: Plaintiff Learns She Was Wrongfully Classified as Deceased
By the Federal Government**

52.     On or around March 4, 2020, Plaintiff learned she had been wrongfully classified as "deceased" by her bank, Wells Fargo.[3]

53.     Wells Fargo incorrectly recorded Ms. McNeil's "date of death" as November 11, 2019- the date of her mother, Valerie Conaughty's death.[4]

54.     In order to complete a simple banking transaction that day, Wells Fargo insisted McNeil complete a "Certificate Declaration of Life."   (*See* Ex. F, Wells Fargo "Certificate Declaration of Life" completed by McNeil.)

55.     At the time, McNeil believed the incident was limited to her bank.  She was wrong.

56.     For purposes of background and context, on March 16, 2020, Pennsylvania Governor Tom Wolf ordered Commonwealth residents to shelter-in-place and ordered a shutdown of all non-essential businesses due to the Covid-19 Pandemic.

57.     On March 25, 2020, nine (9) days after entering the statewide shutdown, Plaintiff McNeil was shocked and dismayed to learn that she had also been wrongfully classified as "deceased' by the Federal Government, including by Defendant/Respondent SSA and the Department of Health and Human Services through the Office of Medicare and Medicaid.

58.     On or around March 25, 2020, an SSA employee confirmed to McNeil her Social Security Number had been "de-activated."

---

[3] At the time- in March of 2020- McNeil was under the impression the aforementioned misclassification was an error by her bank.  McNeil has since been advised that her bank received that inaccurate information from Respondent SSA through SSA's "Death Master File."

[4] For purposes of background, McNeil served as power-of-attorney for her mother and became executor of her estate upon Conaughty's death.

59.     The ordeal caused agony, confusion and dread to Ms. McNeil during an already unsettling time.

60.     Ms. McNeil came to understand that her Social Security Number had been incorrectly added to SSA's "Death Master File".

61.     The Death Master File information also mistakenly reflected McNeil to have "died" on November 11, 2019.

62.     SSA disseminated that false information of Plaintiff's "death" to various agencies within the Federal Government, including but not limited to the Office of Medicare and Medicaid and the Treasury, the Department of Commerce; and also to private businesses, such as Wells Fargo.

63.     In April of 2020, SSA's offices were closed due to the Pandemic.  Therefore, Ms. McNeil sought the assistance of the Office of US Representative Dwight Evans, who represents Plaintiff's district.

64.     Representative Evans' office opened a "Congressional Inquiry" into to SSA's misclassification of Plaintiff's vital status.

65.     Representative Evans' staffer Felicia Parker-Cox worked directly with McNeil and SSA in furtherance of the goal of rectifying Plaintiff's vital status.

66.     On or around April 27, 2020, SSA employee Kyle J. Fernandez Ph.D. advised Ms. Felicia Parker-Cox as follows:

> Regarding Tracy McNeil's inquiry about an erroneous death report, we have removed the report from her Social Security record.

(*See* Ex. G, email from Fernandez to Parker-Cox dated 4-27-20).

67.     Upon information and belief, in a telephone conversation around the same time, SSA employee Nataliya Romanko (who is cc'd to the email identified above) communicated to Ms. Parker-Cox, that the error had been corrected.

68.     Ms. Romanko also told McNeil in a telephone conversation around the same date, that SSA had corrected the error.

69.     Furthermore, in May of 2020 Plaintiff received a letter dated April 30, 2020 from SSA c/o Defendant ID Experts acknowledging that SSA wrongfully classified Ms. McNeil as being "deceased" and assuring the problem had been resolved.  (*See* Ex. H, Correspondence from SSA/ID Experts Dated April 30, 2020.)

70.     Specifically, in that correspondence, SSA and ID Experts wrote:

> We recently discovered that our records wrongly showed you as deceased.  We are sorry for any inconvenience or concern this situation may cause you…
>
> ****
>
> Because we incorrectly recorded you as deceased on your Social Security record, we released your information.  When we learned of this error, we corrected your record and immediately removed your information from the DMF.  We have no proof that your information has been misused.

(*See* Ex. "H".)

71.     Accordingly, from around May 2020 through around January 2021, as a result of representations made by SSA and ID Experts, Plaintiff was under the impression that the misclassification of her vital status by the Federal Government had been rectified.

**2021: Plaintiff Learns Her Vital Status Still Improperly Classified at the Federal Level**

72.    For purposes of background, Ms. McNeil is a yoga teacher whose studio had been shut down as a result of the Covid-19 Pandemic.

73.    Plaintiff's ability to earn income had been decimated and the Pandemic caused her to experienced financial hardship.

74.    Also for purposes of background, on December 23, 2020, then-President Trump signed into law the "Bipartisan-Bicameral Omnibus COVID Relief Deal", which was to provide *inter alia* $600.00 relief checks to qualifying Americans.

75.    Plaintiff McNeil had received the initial CARES Act check in 2020 and qualified to receive the payment from the December 2020 Covid-relief package.  Accordingly, she expected to receive a relief check from that bill.

76.    However, to Plaintiff's dismay, on January 6, 2021, a Covid-relief check in the amount of $600.00 from Defendant Treasury from the December 2020 relief package, arrived for Plaintiff's husband but not Plaintiff.

77.    As a couple that is married filing taxes jointly, the stimulus check from the Treasury should have included Plaintiff's name, and the amount should have been for $1200, rather than $600.

78.    That was alarming to Ms. McNeil because she had received a relief check in May 2020 from the CARES Act.

79.    Accordingly, on January 8, 2021, Plaintiff visited the IRS website to track the status of the COVID relief-check she was due.

80.    Given Plaintiff's recent experience of being wrongfully classified as "deceased", she was concerned once again about the status of her Social Security Number.

81.    Plaintiff made three unsuccessful attempts to enter her Social Security number into the IRS website (which is operated by Defendant Treasury) for tracking stimulus checks.

82.    On each instance, the IRS website responded "Errors have occurred: The information you have entered does not match our records." (*See* Exhibit "I", Screenshot from January 8, 2021 of IRS stimulus check tracking feature, attached.)

83.    Shortly after that occurrence, on or around January 2021, Plaintiff contacted Felicia Parker-Cox once again to serve as a liaison to relevant federal agencies including SSA and the Treasury.

84.    Ms. Parker-Cox advised McNeil that the US Treasury may still have McNeil classified as "deceased" in connection with SSA's prior error.

85.    Upon information and belief, in or around January 2021, Ms. Parker-Cox again advised SSA that Plaintiff's Social Security Number was still misclassified with federal agencies, including the Treasury.

86.    Recently, Ms. McNeil has come to understand that SSA's Death Master File appears to include two (2) entries for her name and Social Security Number, with one of the entries still listed as being "deceased", the other indicating she is alive. (A copy of the Death Master File record as of January 2020 reflecting two (2) entries for McNeil's name and Social Security Number is attached as Exhibit "J.")

87.    Accordingly, the verbal and written assurances from SSA (including its employees Fernandez and Romanko) and from ID Experts, appears inaccurate.

88.    Furthermore, March 5, 2021, the undersigned counsel mailed correspondence to SSA (including its Philadelphia Office of Legal Counsel), the IRS, the Treasury and ID Experts advising of the continued misclassification.  (A true and correct copy of that March 5, 2021

correspondence is attached as Exhibit "K.")  As of the date of this filing, the undersigned has not received a response from any of those agencies.

89.    Meanwhile in Washington D.C., on March 11, 2021, President Biden signed into law the American Rescue Plan of 2021, which included, *inter alia,* relief payments from Defendant Treasury up to $1400 for eligible Americans.

90.    Plaintiff McNeil was eligible to receive $1400 from that bill.

91.    Therefore, on or around March 29, 2021, Plaintiff checked the IRS tracking website to ascertain whether she would receive a check from the American Rescue Plan Act of 2021 from Defendant Treasury.

92.    Despite the fact Defendants SSA and Treasury had repeatedly been put on notice of the misclassification of Plaintiff's vital status, once again, McNeil's Social Security Number did not return a match from the IRS website.

93.    On or around March 31, 2021, Plaintiff's husband once again received a check from the Treasury in connection with the aforementioned 2021 stimulus bill.

94.    Once more, Plaintiff's husband was the sole payee and the amount of the check reflected payment to a single person, even though the couple is married and files taxes jointly.

95.    Accordingly, it is apparent the Treasury has not rectified McNeil's vital status, SSA appears not to have fully rectified the error internally, and SSA has certainly not taken necessary steps to remediate the downstream effects of its error.

## **Plaintiff's Damages**

96.    As a proximate result of Defendants' acts and omissions, Plaintiff has suffered damages which include but are not limited to:

a.  McNeil was wrongfully deprived of Covid-relief stimulus checks, to which she was eligible and entitled;[5]

b.  McNeil is not able to file her income taxes with the IRS because the IRS has classified her as deceased;

c.  For approximately six (6) months in 2020, McNeil was unable to enroll in a healthcare policy due to the misclassification of her vital status.[6]  Being uninsured caused her extreme stress and anguish during a once-in-a-lifetime global pandemic and causing her to forego medical treatment she would have otherwise received;

d.  McNeil spent an exorbitant amount of time on the phone dealing with various government offices and her bank about her Social Seucrity Number and her vital status.  This was all at a time where offices nationwide had been recently closed due to the pandemic. Those efforts by McNeil became akin to full-time job;

e.  McNeil's time and energy were so expended and depleted from the foregoing, she was unable to lead online yoga classes to provide for income while her studio was closed;

f.  McNeil has socially withdrawn from friends, colleagues, students, family and abstained from normal human interactions as a result of the exhaustion, frustration and anxiety from the foregoing;

g.  McNeil has experienced stress, anxiety, despondency, sleeplessness and loss of enjoyment of life;

h.  McNeil is now especially vulnerable to identity theft and apparently will be for the rest of her life; and

i.  Damages- both known and unknown- continue to accrue.

---

[5] Again, Plaintiff did receive the CARES Act check in Spring 2020 but did not receive checks from the December 2020 or the March 2021 relief packages.

[6] Ultimately, McNeil was able to enroll in a healthcare plan because Pennsylvania opted out of the "Healthcare.gov"  federal healthcare exchange program and instead developed a statewide healthcare system known as "Pennie."

## PRAYER FOR RELIEF

### COUNT I
### *BIVENS* CLAIM FOR DEPRIVATION OF FIFTH AMENDMENT LIFE AND PROPERTY INTERESTS
*(Plaintiff v. Commissioner Saul and Associate Commissioner Morenz)*

97.    Plaintiff incorporates the foregoing paragraphs by reference as tough fully set forth herein.

98.    The Fifth Amendment of the US Constitution provides *inter alia* that no person shall be "deprived of life, liberty, or property, without due process of law."

99.    Congress established a damages remedy under 42 U.S.C. § 1983 with respect to state officials for constitutional violations, but did not formally enact a corresponding statute with respect to federal officials.

100.    However, in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389, 91 S. Ct. 1999, 2001 (1971) the Supreme Court of the United States recognized an implied right of action for damages against federal officials for violating a citizen's constitutional rights.

101.    A person's Fifth Amendment substantive due process rights are violated when the government deprives that person of a life, property or liberty interest in a manner that is arbitrary, egregious and "shocks the conscious" Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002).

102.    To establish a procedural due process violation, a person must demonstrate that he has been deprived by a governmental entity of a constitutionally-protected property, life or liberty interest without proper procedural mechanisms to assure propriety of said deprivation.  Daniels, 474 U.S. at 339.

103.    By wrongfully classifying McNeil as "deceased', she was deprived by the federal government of life and property interests.

104.    The fact that a living US Citizen was denied life and property interests as a result of being wrongfully classified as "deceased" by the SSA in its national Death Master File is arbitrary and capricious.

105.    Commissioner Saul and Associate Commissioner Morenz' failure to address this recurrent and catastrophic problem within SSA, even after a 2016 Inspector General Report and 2019 SSA Advisory Board study is reckless and egregious.

106.    Commissioner Saul and Associate Commissioner Morenz' failure to assure SSA rectified a citizen's vital status that it misclassified (even after their agency informed her verbally and in writing that it would) is shocking and egregious.

107.    Accordingly, Commissioner Saul and Associate Commissioner Morenz violated Plaintiff's procedural and substantive due process rights under the Fifth Amendment.

108.    Furthermore, by failing to assure SSA properly investigated whether McNeil was truly deceased when it recorded as much in the Death Master File, and by failing to properly investigate whether the misclassification was truly rectified in April/May 2020, Commissioner Saul and Associate Commissioner Morenz violated Plaintiff's procedural due process rights under the Fifth Amendment.

109.    As a result of this constitutional violation, Plaintiff suffered damages which continue to accrue.

110.    Because there is no other adequate remedy at law for this violation, the application of Bivens is warranted.

WHEREFORE, Plaintiff seeks a judgment in her favor entered against the Defendants identified for this count, as well as an award of damages, punitive damages, attorneys' fees and costs and any other form of relief this Court renders to be proper.

## COUNT II
## CLAIM FOR INJUNCTIVE RELIEF
*(Plaintiff v. SSA, Commissioner Saul, and Associate Commissioner Morenz)*

111.    Plaintiff incorporates the foregoing paragraphs by reference as tough fully set forth herein.

112.    Plaintiff seeks injunctive relief as to Defendants SSA, Commissioner Saul and Associate Commissioner Morenz in the following forms:

    a.  assurance that any and all records of Plaintiff being deceased have been removed from the Death Master File;

    b.  A written letter to each and every federal agency's office of legal counsel instructing said agency to properly classify Plaintiff's vital status (requested in forthcoming petition for injunctive relief);

    c.  A signed statement from SSA for Plaintiff to keep on her person advising that she had been misclassified as deceased by the agency, for Plaintiff to have in the event another entity believes her to be deceased (requested in the forthcoming petition for injunctive relief); and

    d.  A detailed report to Plaintiff how her social security number was misclassified and why the error was not corrected when it was initially investigated.

113.    Plaintiff seeks a Court order compelling the injunctive relief outlined above.

WHEREFORE, Plaintiff seeks injunctive and declaratory relief as set forth above,  as well as any other form of relief this Court renders to be proper.

## COUNT III
### *BIVENS* CLAIM AGAINST CURRENT AND FORMER TREASURY SECRETARY
*(Plaintiff v. Secretary Janet Yellen and Former Secretary Steve Mnuchin)*

114.    Plaintiff incorporates the foregoing paragraphs by reference as tough fully set forth herein.

115.    Plaintiff was deprived property interests by Secretaries Mnuchin and Yellen, who administered agencies that deprived her of stimulus relief checks she was entitled to receive.

116.    The fact that a living US citizen was denied property interests as a result of being wrongfully classified as "deceased" by US Treasury is arbitrary and capricious.

117.    Secretaries Mnuchin and Yellen's failure to address this problem and failure to assure the Treasury it rectified a citizen's vital status that it misclassified is shocking and egregious.

118.    The foregoing constitutes a violation of McNeil's substantive due process rights.

119.    Furthermore, by failing to assure the Treasury and IRS properly investigated whether McNeil was truly deceased when it recorded as Individual Master File, Secretaries Mnuchin and Yellen violated Plaintiff's procedural due process rights.

120.    As a result of those constitutional violations, Plaintiff suffered damages which continue to accrue.

121.    Because there is no other adequate remedy at law for this violation, the application of <u>Bivens</u> is warranted.

WHEREFORE, Plaintiff seeks a judgment in her favor entered against the Defendants identified for this count, as well as an award of damages, punitive damages, attorneys' fees and costs and any other form of relief this Court renders to be proper.

## COUNT IV
## CLAIM FOR INJUNCTIVE RELIEF AS TO TREASRY DEFENDANTS
*(Plaintiff v. U.S. Treasury, Secretary Janet Yellen)*

122.    Plaintiff incorporates the foregoing paragraphs by reference as tough fully set forth herein.

123.    Plaintiff seeks injunctive relief as to US Treasury and Secretary Yellen in the following forms:

    a.    Treasury Defendants should be compelled to issue to Plaintiff McMeil a $600.00 Covid-relief check from the Bipartisan-Bicameral Omnibus COVID Relief Deal of December 2020 (requested in forthcoming petition for injunctive relief);

    b.    Treasury Defendants should be compelled to issue to Plaintiff McNeil a $1400.00 Covid-relief check from the American Rescue Plan of 2021 (requested in forthcoming petition);

    c.    Treasury Defendants should refund to Plaintiff any penalty assessed or levied against her in connection with the late filing of taxes; and

    d.    Treasury Defendants should be compelled to affirmatively demonstrate that any and all records of Plaintiff being deceased have been removed from the Treasury/IRS' Individual Master File and corrected in any and all agency records (requested in forthcoming petition).

124.    Accordingly, Plaintiff seeks an injunctive relief as outlined above.

WHEREFORE, Plaintiff seeks injunctive and declaratory relief as set forth above, as well as any other form of relief this Court renders to be proper.

**COUNT V**
**NEGLIGENCE**
*(Plaintiff v ID Experts)*

125.    Plaintiff incorporates the foregoing paragraphs by reference as tough fully set forth herein. In its joint letter with SSA to McNeil dated April 30, 2020, ID Experts asserted as follows:

> when we incorrectly recorded you as deceased on your Social Security record, we released your information.  When we learned of this error, we corrected your record and immediately removed your information from the DMF.

(*See* Ex. H.)

126.    By transmitting to Plaintiff a letter with the Social Security Administration in connection with the agency's efforts to rectify SSA's error in connection with Plaintiff's vital status and Social Security Number, ID Experts assumed direct and non-delegable duties to Plaintiff.

127.    By negligently failing to "correct the record" and to assure Plaintiff's Social Security Number was removed from the Death Master File, ID Experts breached its duty of care to Plaintiff.

128.    As a direct and proximate result of that breach, Plaintiff suffered damages.

WHEREFORE, Plaintiff seeks a judgment in her favor entered against the Defendant identified for this count, as well as an award of damages, punitive damages, attorneys' fees and costs and any other form of relief this Court renders to be proper.

**COUNT VI**
**NEGLIGENT MISREPRESENTATION**
*(Plaintiff v ID Experts)*

129.    Plaintiff incorporates the foregoing paragraphs by reference as tough fully set forth herein.

130.    In its joint letter with SSA to McNeil attached as Exhibit "H", ID Experts made the representation that SSA "corrected your record and immediately removed your information from the DMF" with negligent and/or reckless disregard for its truth.

131.    Plaintiff relied upon that misrepresentation by abstaining from following up with SSA and other federal agencies to assure her vital records were in fact corrected.

132.    As a direct and proximate result of that misrepresentation and Plaintiff's detrimental reliance on same, Plaintiff suffered damages.

WHEREFORE, Plaintiff seeks a judgment in her favor entered against the Defendant identified for this count, as well as an award of damages, punitive damages, attorneys' fees and costs and any other form of relief this Court renders to be proper.

**COUNT VII**
**NEGLIGENCE**
*(Plaintiff v Leidos, CGI and Northrup)*

133.    Plaintiff incorporates the foregoing paragraphs by reference as tough fully set forth herein.

134.    By accepting taxpayer money to assist SSA in better managing *inter alia,* the agency's vital data, Defendants Leidos, CGI and Northrup accepted affirmative and non-delegable duties to US citizens to properly maintain and accurate disseminate vital data.

135.    As a US citizen with a Social Security Number, Leidos, CGI and Northrup breached their duty of ordinary care to Ms. McNeil by failing to assure SSA maintained and dissemenated accurate vital data, thereby allowing herr Social Security Number to be misclassified by SSA.

136.    Leidos, CGI and Northrup also breached their duty of care to Plaintiff when they failed to assure her vital status was corrected and her Social Security Number properly classified after the agency was made aware of the error and after the agency promised her it had been corrected.

137.    Leidos, CGI and Northrup breached their duty of care to Plaintiff when they failed to notify agencies and businesses that had received false information about McNeil's "death", about SSA's error.

WHEREFORE, Plaintiff seeks a judgment in her favor entered against the Defendant identified for this count, as well as an award of damages, punitive damages, attorneys' fees and costs and any other form of relief this Court renders to be proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for this matter.

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

By:    */s/ Jacob U. Ginsburg*
         JACOB U. GINSBURG, ESQUIRE
         Attorney for Plaintiff
         30 East Butler Pike
         Ambler, Pennsylvania 19002
         Direct line: (267) 468-5374
         Email: jginsburg@creditlaw.com

DATED: May 13, 2021