IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TRACY MCNEIL, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-2208 |
| | : | |
| SOCIAL SECURITY ADMINISTRATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**Tucker, J.**                                                                                                            **August 2, 2022**

Before the Court are: (1) Motions to Dismiss filed by the Social Security Administration, United States Department of Treasury, Andrew Saul, John Morenz, Janet Yellen, and Steve Mnuchin (collectively, "the Federal Defendants") (ECF Nos. 51 and 52); (2) Plaintiff's Response in Opposition to the Motions (ECF No. 55); (3) the Federal Defendants' Replies in Support of the Motions (ECF Nos. 57 and 58); and (4) the Parties' letters to the Court dated May 4, 2022 and June 10, 2022.

For the reasons set forth below: (1) the Federal Defendants' Motions to Dismiss (ECF Nos. 51 and 52) are **GRANTED**; and (2) Plaintiff's claims against the Federal Defendants are **DISMISSED WITH PREJUDICE**.

**I. FACTUAL AND PROCEDURAL HISTORY**

Tracy McNeil ("Plaintiff") commenced this action against the United States Social Security Administration (the "SSA"), the Department of Treasury ("Treasury"), Andrew Saul (the former Commissioner of the SSA), John Morenz (an Associate Commissioner of the SSA), Janet Yellen (the Secretary of the Department of Treasury), Steve Mnuchin (the former Secretary

1

of Treasury), and three private contracting companies: (1) Northrop Grumman Systems Corporation; (2) Leidos Holdings, Inc.; and (3) Identity Theft Guard Solutions, Inc. (f/k/a "ID Experts"). This suit pertains to the federal government's erroneous handling of Plaintiff's identity-related data and its resulting effects.

All Defendants filed Motions to Dismiss Plaintiff's claims, and the Court resolved the private Defendants' motions on March 24, 2022. The Court denied Northrop Grumman Systems Corporation and Leidos Holdings, Inc.'s Motions to Dismiss without prejudice and directed both Defendants and Plaintiff to conduct limited jurisdictional discovery. Further, the Court granted Identity Theft Guard Solutions, Inc.'s Motion to Dismiss and dismissed the company from this suit. Accordingly, this Memorandum addresses the Federal Defendants' respective Motions to Dismiss.

For the sake of clarity, the Court herein adopts relevant portions of its previous recitation of the facts in its March 24th Order:

> The factual basis for this dispute stems from Plaintiff learning—amidst the onset of the Covid-19 crisis—that federal government records incorrectly classified her as deceased. A Social Security Administration (SSA) employee advised Plaintiff that her Social Security Number was deactivated and added to the SSA's "Death Master File," which is a public record of death information. The agency erroneously documented Plaintiff as having died on November 11, 2019—the date of Plaintiff's *mother's* death. By this time, the SSA already disseminated this inaccurate information to other federal agencies and private businesses, including her bank.
>
> On several occasions, Plaintiff was advised that the mistaken reporting was removed from the SSA's Death Master File and the issue was resolved. Notably, Plaintiff received a letter dated April 30, 2020 from the SSA, "c/o Defendant ID Experts." In the letter, the SSA confirmed that Plaintiff was wrongfully classified as deceased, apologized for creating this problem, and assured her that the problem was fixed. Therefore, Plaintiff proceeded with the understanding that she would not experience any further issues. Unfortunately, the downstream effects of this problem persisted.

> Despite being informed that she was no longer misclassified, Plaintiff experienced issues obtaining Covid-19 relief and accessing other benefits. In particular: (1) she did not receive stimulus checks from the December 2020 and March 2021 Covid-19 relief packages; (2) she was not able to file her income taxes, as the IRS also classified her as deceased; and (3) for six months, she could not enroll in a healthcare plan, leaving her uninsured for part of the pandemic.

*See* ECF No. 59 (internal citations omitted).

On these grounds, Plaintiff filed a claim for damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against the Individual Federal Defendants, alleging a deprivation of Fifth Amendment life and property interests without due process. Moreover, she seeks injunctive relief from both the Individual Federal Defendants and the Federal Agency Defendants. In their respective Motions to Dismiss, all the Federal Defendants assert that Plaintiff has failed to state a claim for which relief can be granted. In addition, the Federal Agency Defendants contend that the Court has no subject matter jurisdiction over this case.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may challenge jurisdiction based on the face of the complaint—a facial attack—or its existence in fact—a factual attack. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack contests the sufficiency of the pleadings and the court must view the factual allegations in the complaint in the light most favorable to plaintiff. *Constitution Party of Pa. v. Aichele*, 757

3

F.3d 347, 358 (3d Cir. 2014). In reviewing a facial attack, a court must only consider the allegations of the complaint and documents referenced therein. "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Id.*

A factual attack, on the other hand, concerns "the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). "As the party asserting jurisdiction, [plaintiffs] bear[] the burden of showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995). In a factual attack, a district court may weigh and "consider evidence outside the pleadings." *Gould Elecs. Inc.*, 220 F.3d at 176.

### B. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Phillips*

*v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)).

Applying the *Iqbal* and *Twombly* principles, the Third Circuit decided *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010), in which it set forth a three-part test that district courts must apply when evaluating whether allegations in the complaint survive a 12(b)(6) motion to dismiss.  A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  If the complaint fails to do so, the motion to dismiss will be granted.

### III. DISCUSSION

#### A.  *Bivens* Claim Against the Individual Federal Defendants

##### 1.  Qualified Immunity

At the outset, the Court notes that the Individual Federal Defendants are entitled to qualified immunity. Qualified immunity is a defense to *Bivens* actions, as it "protects a government official from liability for civil damages as long as his conduct did not violate clearly established rights of which a reasonable person would have known." *Credico v. Krenitsky*, 845 F. App'x 196, 198 (3d Cir. 2021) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). When a qualified immunity defense is raised on a motion to dismiss, the Court must assess "whether the complaint contains plausible allegations of a constitutional violation ... and whether the asserted constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021).

Here, Plaintiff avers that her Fifth Amendment life and property interests were violated due to the Government's error. Pl. Resp. in Opp. 19, ECF No. 1. However, the Court finds no indication that accurate classification in Government records—and its associated benefits—constitute a "clearly established" right. Accordingly, qualified immunity applies to the Individual Federal Defendants.

### 2. Extending *Bivens* to a New Context

Alternatively, even if the Individual Federal Defendants were not entitled to qualified immunity, Plaintiff's claims still cannot proceed. "[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860, 198 L. Ed. 2d 290 (2017). That is, "a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). Here, Plaintiff's Complaint is devoid of any allegations specifically tying any of the Individual Federal Defendants to the alleged harms. On this basis alone, Plaintiff fails to state a claim for relief.

And again, even if Plaintiff *did* sufficiently plead that the Individual Federal Defendants—via their own actions—violated the Constitution, the Court still could not afford her any recourse vis-à-vis *Bivens*. In *Bivens*, the Supreme Court found "an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S.Ct. 2003, 2006 (2017) (citation omitted). Since then, the Supreme Court has only recognized two additional causes of action under a *Bivens* claim. *See Davis v. Passman*, 442 U.S. 228 (1979) (permitting a *Bivens* remedy in a Fifth Amendment gender discrimination case); *see also Carlson v. Green*, 446 U.S. 14 (1980) (permitting a *Bivens* remedy in an Eighth Amendment cruel and unusual punishments clause case). In fact, the Supreme Court

6

has established that "expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857 (internal quotations omitted). Respecting the importance of separation of powers between the judicial and legislative branches of government, the Supreme Court advised lower courts to refrain from implying causes of actions under *Bivens* in the absence of statutory authority—that is Congress' responsibility. *Id*. at 1856.

Traditionally, courts applied a two-part test to determine the appropriateness of extending a *Bivens* cause of action. First, the Court examined whether the claim arises in a "new context" or involves a "new category of defendants." *Hernandez v. Mesa*, 140 S. Ct. 735, 743, 206 L. Ed. 2d 29 (2020). Second, if the claim does indeed arise in a new context, the Court assessed whether there exists any "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (internal quotations omitted). However, the Supreme Court recently reformulated this test. In *Egbert v. Boule*, 142 S.Ct. 1793, 1803 (2022), the Supreme Court determined that these two steps can be distilled to one single inquiry; that is, "whether there is any reason to think that Congress might be better equipped to create a damages remedy." Further, the Court specified that if there is even one rational reason to defer to Congress to afford a remedy, then "a court may not recognize a *Bivens* remedy." *Id*. Practically, the Court concluded that a rational reason for deference to Congress will exist "in most every case." *Id*.

Finally, the presence of an alternative remedial structure counsels against extending *Bivens* to a new cause of action. To be sure, the Court may not even determine the *adequacy* of the alternative remedy, as this too is a task left to Congress. *Id*. at 1807. Indeed, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id*. This remains true "even if a court independently concludes that the

7

Government's procedures are 'not as effective as an individual damages remedy.'" *Id*. (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

Here, the Parties dispute whether Plaintiff can make a viable *Bivens* claim against the Individual Federal Defendants for the misclassification of her vital status and subsequent failure to correct this record within a desired timeframe. The Individual Federal Defendants do not challenge Plaintiff's allegations of misclassification, rather, they argue that there is no basis for providing a *Bivens* cause of action, particularly in light of the Supreme Court's recent holding in *Egbert*. The Court agrees.

Plaintiff seeks damages under *Bivens*, yet alternative relief is afforded by the Privacy Act of 1974, 5 U.S.C. § 552a(d)(2). Under the statute, individuals must request the amendment of records from a federal agency and may only seek judicial review if the agency makes a final, adverse agency decision. Plaintiff states that the Individual Federal Defendants' assertion that there is an administrative remedy available "border[s] on offensive," given the "shocking amount of effort" it took to fix this issue. Pl. Resp. in Opp. 11, ECF No. 55. She highlights that she enlisted the help of numerous people, including staffers at her own US Representative's office. *Id*. The record evidence submitted with the Parties' briefings does evince Plaintiff's tiresome efforts to resolve this matter. Still, these efforts do not negate the fact that an opportunity for recourse under the Privacy Act of 1974 was available. Additionally, to the extent that Plaintiff still contests the amount of funds that the IRS should have disbursed to her, she can initiate a tax refund suit against the agency, pursuant to 26 U.S.C § 7422.

The Court does not trivialize the consequences suffered by Plaintiff due to the Government's misclassification, as well as the apparently arduous process Plaintiff undertook to correct the errors. But as a matter of law, these unfortunate circumstances are insufficient to

extend *Bivens* to this new context. The existence of alternative remedies indicates that Congress has likely contemplated allowing a damages remedy for record misclassification and perhaps decided against it. Congress instead provided alternative remedies to address such issues, as well as an opportunity for judicial review in cases of adverse final actions. The fact that Plaintiff deems the remedies unsatisfactory is irrelevant to a *Bivens* inquiry. Accordingly, the Court declines to create a new *Bivens* cause of action and dismisses this claim against the Individual Federal Defendants with prejudice.

### B. Claim for Injunctive Relief Against all Federal Defendants

Plaintiff seeks the following injunctive relief against the SSA, Commissioner Saul, and Associate Commissioner Morenz:

> a. assurance that any and all records of Plaintiff being deceased have been removed from the Death Master File;
> b. A written letter to each and every federal agency's office of legal counsel instructing said agency to properly classify Plaintiff's vital status (requested in forthcoming petition for injunctive relief);
> c. A signed statement from SSA for Plaintiff to keep on her person advising that she had been misclassified as deceased by the agency, for Plaintiff to have in the event another entity believes her to be deceased (requested in the forthcoming petition for injunctive relief); and
> d. A detailed report to Plaintiff how her social security number was misclassified and why the error was not corrected when it was initially investigated

Pl. Compl. 20, ECF No. 1.

Further, Plaintiff seeks the following injunctive relief against Treasury and Secretary Yellen:

> a. Treasury Defendants should be compelled to issue to Plaintiff McMeil a $600.00 Covid-relief check from the Bipartisan-Bicameral Omnibus COVID Relief Deal of December 2020…;
> b. Treasury Defendants should be compelled to issue to Plaintiff McNeil a $1400.00 Covid-relief check from the American Rescue

9

>    Plan of 2021 …;
>    c. Treasury Defendants should refund to Plaintiff any penalty assessed or levied against her in connection with the late filing of taxes; and
>    d. Treasury Defendants should be compelled to affirmatively demonstrate that any and all records of Plaintiff being deceased have been removed from the Treasury/IRS' Individual Master File and corrected in any and all agency records…

Pl. Compl. 22, ECF No. 1.

### 1. Injunctive Relief Against the Federal Agency Defendants

As a threshold matter, Plaintiff's claim for injunctive relief against the SSA and Treasury is barred by sovereign immunity. It is well settled that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Indeed, "[a] suit against a Federal agency is a suit against the United States for the purposes of sovereign immunity." *Ginn v. Burroughs*, No. CV. 18-3763, 2018 WL 6522928, at *2 (D.N.J. Dec. 11, 2018) (quoting *Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 388 (D.N.J. 1996)). Moreover, a federal court does not have subject matter jurisdiction in such cases without an "express and unambiguous" waiver of sovereign immunity. *See Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affs.*, 426 F.3d 241, 246 (3d Cir. 2005) (citation omitted). Finally, "[a] party suing the federal government bears the burden of establishing that the United States has unequivocally waived its immunity from suit." *United States v. Schiaffino*, 317 F. App'x 105, 106 (3d Cir. 2009).

Here, the SSA and Treasury—and by extension, the United States—are entitled to sovereign immunity and have not consented to suit in this context. Plaintiff's Response fails to discuss sovereign immunity at all, let alone any mention of sovereign immunity being waived. Nor could she successfully make such an argument, as the Supreme Court has held that *Bivens*

10

actions cannot be brought against federal agencies. *See Meyer*, 510 U.S. at 472 (holding that "[t]he logic of *Bivens* itself does not support the extension of *Bivens* from federal *agents* to federal *agencies*.") (emphasis in original). In the absence of any material possibility that the agencies' immunity has been waived, the Court lacks subject matter jurisdiction over this particular dispute. Consequently, the Court dismisses Plaintiff's claims for injunctive relief against the SSA and Treasury with prejudice.

### 2. Injunctive Relief Against the Individual Federal Defendants

Plaintiff's claims for injunctive relief cannot proceed against the Individual Federal Defendants as well, because such relief is unavailable in *Bivens* actions. "*Bivens* suits are only actionable when the plaintiff sues federal officials for *monetary damages*." *Johnson v. U.S. Magistrate Susan P. Baxter*, No. 1:16-CV-00059, 2016 WL 6892928, at *5 (W.D. Pa. Aug. 4, 2016) (citing *Butz v. Economu*, 438 U.S. 478, 504-05 (1978)) (emphasis added). It is unclear whether Plaintiff's request for injunctive relief is brought pursuant to *Bivens*, however: (1) *Bivens* is the only legal authority referenced in the entire Complaint that she contends the Federal Defendants violated; and (2) Plaintiff expressly states in her Response that she is not bringing her claim under the CARES Act or the Administrative Procedures Act. Pl. Resp. in Opp. 19, ECF No. 55. Thus, to the extent that the request for equitable relief does indeed rely on alleged *Bivens* violations, it must be denied.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED AND DECREED** that: (1) the Federal Defendants' Motions to Dismiss (ECF Nos. 51 and 52) are **GRANTED**; and (2) Plaintiff's claims against the Federal Defendants are **DISMISSED WITH PREJUDICE**.

An appropriate Order follows.